Thank you, Mr. President, for the petitioner, Your Honor. Your Honors, opposing counsels, team opposing counsel, may I please the Court. This case is very different from any of the previous VEOA vacancy announcements. Cancellation claims have appeared before this Court. The Court's rulings in Abel, in Dean, and in Joseph all turned on different dispositive facts. In those cases, the question was that a VA preference, a veteran's preference, was granted before the cancellation of the vacancy announcement. This case is very different because in this case we're arguing that the cancellation occurred before any veteran's preference could be given. But is your position that the cancellation had something to do with the fact that, for example, that applications were coming from outside of the agency? Yes, Your Honor. In fact, the agency did accept external applicants. It's the agency, I'm sorry, Respondents Supplemental Index, page 183. The agency clearly took applications from three pools. Two of them were internal NASA and one of them was an external pool, Schedule A, certain Schedule A appointees that were, regardless of what agency, that came in the way that that announcement was written. And so, yes, they should have, in this particular case, they should have accepted Mr. Patton's application and given it consideration. The concern is that in this case they didn't. At 3304, that won. And Joseph, the Court's recent ruling in Joseph, both make it clear that when an agency takes external applicants, any external applicants, it has to take preference-eligible veterans regardless of their hiring agency. And so because of that, Mr. Patton's application and Dr. Patton's application should have been accepted and considered. In this case, what evidence we do have, and we don't have much because we weren't given the opportunity for discovery before the Court, the evidence that we do have and that the agency, I'm sorry, Respondents Supplemental Exhibit, pages 144 and 154, in response to the Department of Labor's request for investigation, the petitioner's application was either not accepted or not considered at all. They said that it was out of the area of consideration, which clearly, after Joseph and pursuant to 3304F1, that is not the case. Even if they did, I'm sorry, actual notice required in the Marshall Space Flight Center indication, you had to be within the space, the Marshall Space Center. That was one of the conditions of the notice. There were three conditions for whom they apply. The first condition was NASA and Marshall Space Flight Center, certain appointees there. The third one was certain Marshall Space Flight Center appointees that have become conversion eligible through some recent statutory implication there. And then the middle one there is those who are eligible under certain Schedule A appointments. And it doesn't make clear, as it does with the first and the third, that that's limited only to NASA. I think looking at the way that who may apply in the vacancy announcement, it's very clear that there are external applicants being taken, and those are certain Schedule A appointees outside of NASA and outside of Marshall Space Flight Center. Even if... Are you also alleging that once the agency has accepted applicants, that it has no right to terminate the notice? I'm not saying they have no right, Your Honor. What I'm saying in this particular case, the facts aren't clear why that announcement was canceled. The first reason that was given was that the vacancy announcement was canceled because none of the applicants were within the area of consideration. The applications were not accepted and not considered. Then later, subsequently to that, the decision of the agency, Mr. Hightower came out and said, we tried to repost or reauthorize the announcement and found out there was a realignment. Our allegation is that that realignment is pretext for canceling the vacancy announcement. We don't have the evidence here to support it because of the fact that we didn't get the opportunity to do discovery and to determine if there was any evidence to rebut the agency's allegation. That's all it is, that there was a cancellation due to a realignment. We have the word Mr. Hightower, who I don't know and who I've never spoken with, but that's all there is. And usually when an agency realigns and loses funding for positions, there's going to be more than just one person responding to a Department of Labor vet's administration claim to be able to substantiate that that doesn't exist in this case. So yes, Your Honor, our position is in the particular facts of this scenario, discovery may show us that Dr. Patton could have been the only qualified applicant in that pool. At that point, he should have been given not the opportunity to be selected, not the actual selection, but the opportunity to be considered even if he was the only one to be compared against the qualifications of the position. Even though the position might have been realigned out of existence? I think that's a good point, Your Honor, that if in discovery we're able to determine that the agency did in fact realign and did in fact cancel because of that realignment and there's no evidence that would rebut that, we're unable to find that evidence. I think then you're looking at a situation similar to any of these types of cases before the board where jurisdictional facts and merit facts kind of overlap. And I think in that case you'd see that we would probably have to withdraw our claim at that point if there was evidence and we were given the opportunity to discover evidence that might rebut that allegation. We weren't given that opportunity to even discover that. But yes, to answer your question, if in fact there is evidence or no evidence to rebut that after discovery, then of course I think that under the facts of this case we'd be more consistent with the court's holdings in Abel and in Joseph and similar to Dean as well. I think that kind of gets to what we're asking the court to do here today is we're asking the court, first of all, to find that the facts in the record that exist before it are insufficient to make a decision that's consistent with Abel, that's consistent with Dean, that's consistent with Joseph. We're asking the court, first of all, to remand back to the MSPB, to the administrative judge, to give us the opportunity to develop the record. The respondent cites in its brief the case of Conway, which is a reduction in the force case. I think it's instructive as to what might or should have happened down before the MSPB. Conway showed that when an employing agency had put forth prima facie evidence that it had properly invoked the reduction in force procedures, the appellant in that case was given the opportunity to produce rebuttal evidence, which meant that he was probably given also the opportunity to discover that rebuttal evidence. Here we didn't have that. So we're asking the court to send this back to the MSPB, allow the administrative judge to grant us discovery and opportunity to discover this rebuttal evidence, and then an opportunity to argue, based on all the facts, whether or not A, he was given, Dr. Patton was given the opportunity to apply and be considered. B, if he was given the opportunity to apply and be considered, was the agency's cancellation in bad faith or is their proffered reason legitimate? I think those are the facts that we're asking this court to, or the opportunity we're asking this court to give us today. Secondarily, we're asking the court to take the step of issuing the ruling that the facts enable and Joseph and Dean did not allow it to issue, which is to say that the MSPB does have jurisdiction to hear a VEOA claim when a vacancy announcement is canceled, when the allegation is that the cancellation of the vacancy announcement was done with the motive of avoiding hearing a veteran's preference. This court made a similar ruling in Brugere, pursuant to the Whistleblower Protection Act, and it said that if we allow agencies to cancel vacancy announcements and don't give appellants the right to challenge that under the Whistleblower Protection Act, we're immunizing employing agencies and we're saying even when you have the motive to discriminate against somebody because they're a whistleblower, as long as you're willing not to fill the position, we're going to immunize you canceling that vacancy announcement. The court didn't buy that in Brugere, and there's no reason that the court should buy that under the VEOA either. The VEOA expressly gives a right to compete. MSPB thought that the cancellation was a discretionary act. And I just wonder, in the case that you mentioned, the whistleblower had the color of a reason for complaining about the cancellation. Here, I gather that there was no facial basis for discrimination or hostility or anything else. Is that right? It just was cancelled? Discrimination or hostility, and probably not with regards to veterans, or else he would have asserted an abuser claim. But certainly, the claim that he's asserting is that he's not given the opportunity to even challenge whether or not this veteran's preference should have been given, or if it should have been, was given. And without that, the court would be immunizing the agency. The employing agency and every agency that the employer flew his day would be immunized. As long as he can cancel it and not fill the position, they can avoid giving veterans preference. And certainly, there is some hint that that may be happening, granted that it's very circumstantial in this case. There's one email that's in the record in this case, and I believe it's at – I don't know how to confirm this, but I believe it's on page 180 of the agency's supplemental index. A NASA employee with Dr. Patton's email suggested that, I understand your suspicions, and I suspect the same thing happened to my daughter-in-law when she returned from military service overseas. This is entirely conjecture on my part, but it certainly happens that agencies do do this, and there should be an opportunity to at least spatially challenge whether or not that discretion that the agency has is or is not abused. And I think that's the question that the respondent can't answer here today, is if the court affirms the MSPB, what gives – what protects from the abuse of discretion by the agency? Nothing, if the court affirms the MSPB in this case. Well, are you alleging that under the BEOA that the MSPB has jurisdiction? Is that the crux of your allegation? That's the clerical crux, Your Honor. The judge found that we failed to state a claim that was based on facts that predicate jurisdiction, and therefore they essentially were saying there's no jurisdiction. We realize that there is jurisdiction. It's just inextricably intertwined with the questions of merits in this unique factual scenario where the cancellation occurred for me. That's not under the BEOA. Certainly under the BEOA. I think the 33 – the BEOA guarantees a right to compete, and I think that without that right to compete and the right to challenge it, I think – But wouldn't you have the obligation or at least exhaust your administrative remedies at BEOL before you went to the MSPB? In regards to this particular position we did, Your Honor. And what happened there? BEOL took the information from NASA and found out that they agreed with NASA and allowed us to continue to go to the MSPB. Did you have the opportunity to make discovery during that hearing process? No, Your Honor. We requested discovery as soon as I came on board to represent Dr. Patton. The agency made a motion to hold discovery in advance pending ruling on jurisdiction and the judge ruled on jurisdiction. No, before the BEOL. There's no opportunity for discovery in that process. The individual presents his claim.  But you presented whatever evidence was available to you at that point. What was available, Your Honor? There may be more out there that we haven't had the opportunity to discover to rebut the agency's obligations. Okay. That's it. The rest of you are done for the BEOL. That's good. Thank you. Thank you, sir. May it please the Court. I think the key issue in deciding this case is something that Appellant of Tister's counsel highlighted. It's that the jurisdiction and Barrett's issues overlapped. And I think a reading of the review of the agency's decision, starting at page 26 of the decision, highlights that. And our position is that the MSPB lacked jurisdiction under 3330A because Mr. Patton never alleged that the agency violated the individual rights. And I quote, under any statute or regulation relating to veterans' preference. This complaint simply alleged bad faith but didn't cite to any or reference any statute or regulation upon which he was relying. And what the A.J. did, starting at page 26, is even though she had initially taken jurisdiction and assumed it, she started with a jurisdictional analysis and looked at Pruitt, which was a whistleblower case, that basically said the Board lacks jurisdiction over non-selections unless there's a claim of a violation of the right to statute. And she went on and cited 3330A and cited able in the board cases sustaining the agency's right to cancel. And then ultimately said, in any event, the record in this case show that essentially on the merits, the agency should prevail. But then she said, the appellant has not identified a statute or regulation entitling veterans' preference and dismissed the failure to state a claim. Our position is the court could affirm the MSPB's decision... It's not whether the petitioner has identified the statute. The A.J. identified the statute. Are you drawing a distinction as to who brings forth a statute that may be applicable? No, it's the petitioner's burden to allege a statute or regulation that was violated. If a petitioner doesn't mention a statute but clearly has a statutory right, your position can't be that therefore the petitioner is out of court. No, that's correct. I mean, the petitioner, especially a pro se, and I forget whether he was pro se at the time, might not be required to cite the statute by section or the section of the Code of Federal Relations, but must allege some violation of a right relating to preference eligibility. And a review of his claim in 41 of the appendix shows that the form set that out, basically say what statute or regulation are you relying on, how do you contend that it was violated, and things like that. The only information he gave was that he had suspicions, given the number of cancellations and nothing more. And essentially what the AJ could have concluded based on her analysis, which started and actually ended with jurisdiction is that the board lacked jurisdiction. But in any event, on the merits, failure to state a claim, the case should also be affirmed, could be affirmed on that ground because there were two independent reasons the agency provided to the DOL process. But that doesn't really get to the merits of the case. She never reached the merits of the case because she decided on jurisdiction, lack of jurisdiction. Actually, she did reach the merits in another part of the decision, page 26, note 6, because she, it's within that section, she said the bad faith argument was basically that, challenged the reasons the agency gave for the cancellation, which was that none of the applicants, including Petitioner, were within the area of consideration, and that actually Mr. Hightower's letter at appendix 100 said that they tried to expand the area of consideration after that point, which would have benefited Petitioner, but then there was a realignment, and there was no authority for the position. What if the Petitioner establishes, excuse me, a pattern by the agency in which the decisions, every time that a selection process would allow for a preference individual to come to the top, they realigned or they withdrew the particular notice? And this happened several times with this particular individual. At least the allocations are there that it happened several times. Is that within the jurisdiction of the agency to at least review it on a pattern basis, establishing a bad faith of the agency? No, just as in ABLE, the ABLE decision, the record in this case fully supports the decision made to dismiss the case. For this particular position? And that's the only position at issue on this appeal. He has abandoned all of his other cases, including… Not before the agency. He's abandoned the appeal position before us, but the allegations of bad faith were he was trying to establish before the agency by showing them the fact that every time the agency posted a notice and a preference individual was part of that poll, that they withdrew the notice. In our view, there is no cause of action for that type of claim where you have a kind of freestanding claim of bad faith without the veteran making any connection to any statute or regulation relating to veterans' preference that was violated. He never did that. He never… Because the veteran just didn't cite the connection. The AJ cited the connection. No, the AJ actually said there was no connection and that he cited no connection. He cited no statute of regulation, and that's at the bottom of page 28 of the decision. A claim such as, Your Honor, such a claim like that might arguably be a USARA type of claim if there were some modicum of evidence that there was some… I'm sorry. The AJ says that the VOA establishes a mechanism for addressing alleged violations of an individual's right to self-preference. Under other statutes and regulations. And that, again, has enabled… There could be a violation if the agency action is contrary to law, but a mere claim of bad faith without anything more but does not even allege something that's contrary to law. The problem seems to be, as counsel has told us, that they weren't allowed discovery to determine whether, in fact, the alleged violations of the individual's right did or did not take place. So how will they come to know whether the jurisdictional basis is present if they're not allowed to ascertain the facts that they shouldn't? A decision on discovery is within the discretion of the administrative judge, and in the record there is a copy of the kind of… No, it's not absolute. The discretion has to be within the parameters of due process, within the parameters of the statute and of the policy. You can't just irrationally issue a discretionary decision… That's correct. You can't inquire into it. Well, there was no abuse of discretion here, Your Honor, because the remedy that Mr. Patton sought, which is at Appendix 44, was he wanted the board to have copies of his entire personnel record, review his ranking scores on all positions for which he applied. It was 22 depositions. It was into matters that really had nothing to do with the vacancy announcement. They didn't ask him too much, but they got nothing. He never narrowed it down. As a matter of fact, some of the arguments that the petitioner of counsel made today were never in his brief, and in his brief he said he was expressly waiving everything except jurisdiction. The agency did brief the arguments that he raised at Appendix 243. But if you can't cross the hurdle of jurisdiction, then there's no point in discussing that. Absolutely, and this court could affirm the decision of the board simply on the ground that the board lacked jurisdiction. If jurisdiction and the merits are intertwined, if, in fact, there was some sort of discriminatory action, then there would be jurisdiction. How is he going to find out whether even in primification there's a basis for jurisdiction? There's no primification. I'm sorry. A review of his claim, starting at page 41, establishes there's not even a primification case for the kind of discovery he was seeking or a claim that he was making. We wouldn't pose any kind of premium because the AHA committed no reversible error here in dismissing this case, whether it be for failure to state a claim on the merits or for lack of jurisdiction. I mean, on the merits, there's no dispute that he was outside the area of consideration. He doesn't dispute that. Is that because this advertisement for this position was then what was limited to people at the Marshall Space Flight Center? Absolutely, and that's at page... The announcement is at page 110 of the appendix, and we quoted parts of that in our brief. These other... Now, Mr. Haddix said... He said something about other people applying from out... From... He was limited to people at Marshall Space Flight Center, correct? That's correct. And I thought the opposing counsel, Mr. Haddix, said something about he was voting that people from outside apply. I don't recall anything to that effect in the record, Your Honor, and the AHA did not discuss that in any way. It wasn't briefed before this court, and at page 26 in the footnote 6 of her decision, she makes no reference to that whatsoever. So that may have been, I'm not sure, with respect to some of the other announcements for which he's abandoned his claims. Is the basis of your jurisdictional argument simply that the solicit or the advertisement for this position was limited to people at Marshall Space Flight Center? No, the basis for our jurisdictional argument is 5 U.S.C. 3330A, which admittedly we did not discuss as well as we could have or should have in our brief, but that statutory provision is discussed in the AHA's decision at page 26 and often relied upon in a lot of the underlying court cases, including the recent Dean case that this court's affirmed and the Jolly case, that in order to establish court jurisdiction, the veteran has to allege the violation of rights, quote, under any statute or regulation relating to veterans' preference. There's nothing in his claim at page 41 that relates to that. Of this document? 41 of the appendix, yes. This is new. The joint appendix, right, 41, is the MSBB form for veterans' preference claims for a VO out appeal. And basically says what law or regulation did the agency violate? He doesn't cite anything. He doesn't mention anything. Examples would be if a veteran came in and said, the agency decided I wasn't eligible for a VA out of preference, and then there'd be jurisdiction. Or if a veteran came in and said, I was entitled to 10 points, but they only gave me 5. Or a veteran came in and said, I was ranked first on the certificate of eligibles, but the agency chose number 3 without getting Passover approval from OPM. Or in some of the cases, the Dean versus Agriculture case, the veteran said, my veteran's preference rights were violated because the agency was using the Outstanding Scholar Program and that can't trump VO. So there has to be some connection in the claim to a right under statute of regulation relating to a veteran's preference. Let me say, getting back to that stage, what is the Schedule A, the second review criteria? June 30th? That was not in the announcement, but the agency did. Yes, it's in the announcement. The first and the third are national reporting. The first and the second is or serving on appointment out of the sections of the Schedule A. That's where, again, that was not an issue that was addressed below, but appendix- It's in the briefs. That's how I know about it. Well, at appendix 243 is where the agency- They say only that has been announced. In that file. He was not, he was not within those categories. Counsel says he was. Counsel says those who were not national employees had the opportunity to apply on Schedule A. There's no evidence that he was, and there's no evidence in the record that he was, and the agency's argument before the board, which, again, the board didn't address, was that even if it had been opened, the agency did not accept applications from those individuals under merit promotion procedures. If the court feels that this issue needs to be addressed further, we would be happy to submit a supplemental brief because this is a new argument for me today. The new argument being that people were considered from outside commercial- Yeah, there's nothing in the record that I remember about that, and I could be wrong, but I don't think so. I was trying to say, in the governor's brief, it urges us to affirm on the grounds that the board correctly determined that we failed to stay in the plan. That's correct, and upon further reflection, Your Honors, when we looked at 3330A and some of the other board cases and looking at the A.J.'s decision, what she did was actually start out with jurisdiction and end with the jurisdictional provision, but dismiss from failure to stay in the plan. But essentially, there's no reversible error because the court could affirm either on the ground that the board lacked jurisdiction or on the ground that even if there were jurisdiction in any event, for that footnote 6 on the merits, he's not entitled to prevail because- It was limited to people at the board. It was limited to people, and the agency canceled the announcement, had no authority anymore for the position. In some of the cases, such as Sheron, the board case, sometimes an agency may have a veteran with a preference before it, and in that case, canceled it and appointed someone else to a similar position but not the identity position. That's okay. We're out of time, but nobody, you haven't answered this question as to whether when it says it may apply against the three categories of which the second appears Schedule A, the first and third are national employees. This is your brief, this is the government's brief. It was in the briefs that came before us, and if, in fact, because we know that this petitioner was not a NASA employee, we've gone through this very elaborate procedure which suggests that nobody has said you can't apply because you're not on Schedule A, and yet no one seems to know what Schedule A is. There's no evidence in the record that he was a Schedule A employee under that category. Well, I didn't see that the AHA said that you're not a Schedule A employee or that you're not entitled to put yourself into this loop because you don't comply with the announcement criteria. This is the government's brief I'm looking at. This is your appendix, which has the list. Yeah, this was the joint appendix, the... Well, it's bound by... Right, we filed... It's a supplemental appendix for his filing. Yeah, we filed it. This appendix expired jointly by the parties. This appendix, the government filed because the petitioner did not file on it. There were some motions going back and forth, and we agreed that, with the petitioner's counsel in the court, we agreed that the appendix that could be used in this case would be the one that the government filed, although it was a joint appendix, it should have been filed. So you're saying this was filed because the petitioner didn't file an appendix. And was this... Are the contents agreed on by the petitioner? Yes. So the parties both agreed on the contents. That's correct. So it's a joint appendix. That's correct. Even though that's the... It's a joint appendix in the sense that it represents the agreement of the parties as to what's into it, and it was filed in the wake of the fact that the petitioner didn't file one, so the parties agreed and the government agreed to do the mechanics of filing. That's correct. So is your theory that that excuses not knowing of Schedule A? Our theory is Schedule A has nothing to do with this case because he never showed he was within it. It really... The A.J. never addressed it. There were other reasons for sustaining the decision to cancel the vacancy. The court did not even reach that, if there's any question. It was his burden to establish jurisdiction, which he didn't, and the extent of the body of Schedule A was his burden to put that in. So I just don't understand where that comes from. I have just one question. Is 111 of the joint appendix where it says, who may have thought this is where you say it was limited to Space Flight Center employees? Yes, people at Marshall, not... And he was not at Marshall. He was at Oak Ridge Lab in Tennessee, a different... He had been an interim employee at Marshall years before and he wanted to get back, but he was not within that category of who may apply in terms of current Marshall employees. And that's undisputed. Thank you. Well... Hypothetically, assuming that you have an employee who has applied for ten different positions with veterans' preference, and every time that the individual would be eligible for selection, because he would be number one due to his veterans' preference, that particular position is then eliminated or restructured or realigned by the agency. And this pattern is established over ten different positions. Is that an establishment of that faith, hypothetically? Would that be a claim that the MSPB could hear? No, not... The only way the MSPB could hear it is if the veteran met his or her burden to submit a claim with respect to each announcement asserting what the violation of the statute or regulation was that related to veterans' preference. Would it have to be done for each position or on a cumulative basis after having gone through ten of these particular aspects? Hypothetically, can he or she at that point raise the issue of bad faith on the part of the agency? I believe the answer is no, Your Honor, because one purpose of requiring veterans to go through the Department of Labor processes, which is a mandatory requirement, they must exhaust administrative remedies, and that is a jurisdictional requirement before they come to the boards. That's where Labor does its investigation. And there are very short timeframes at DOL, in large part in order to serve the policies as if there's a problem, it can be corrected quickly. So that under VOA, I believe the answer would be no. There might be a USERRA type of claim in a situation like that, but not under VOA. Under USERRA, there's no requirement to go to the Department of Labor to exhaust administrative remedies. A person can go straight to the board. But then you'd have a mandatory hearing requirement before the board and the USERRA. That's correct, which you don't have under VOA. Thank you. Thank you very much. Let me clear up a couple of quick points there. First of all, Schedule A, to my understanding, is individuals with severe physical and or mental impairments. They get a hiring preference under certain disability statutes. We're not saying Dr. Patton has a severe physical or mental disability. What we're saying is the agency, in this case, reached outside of the NASA pool to get Schedule A applicants outside of NASA to apply. And when that happens, pursuant to Joseph and other cases at this board, and the board below has seen, they have to accept preference-eligible vets as applicants as well. They don't have to give them a 5- and 10-point preference. That much is clear. But they do have to accept the application. Okay. The notice then is not even an argument that he complies with, at least with what it says he may apply, what the notice says in terms of who may apply. In terms of what the notice says and what the case law says, he absolutely had the right to apply because of his veterans' preference. But not under Schedule A? Not under Schedule A, Your Honor. I mean, Schedule A, all that does is it reaches outside of NASA's workforce externally, and, therefore, veterans, preference-eligible veterans, outside of NASA then have the opportunity. If they restricted it only to individuals within NASA, it was a pure merit promotion, then certainly there's no veterans' preference that would apply there to an individual like Dr. Patton whose Department of Energy had no bridge to come in and apply to a merit promotion. I understand that. Dr. Patton understands that. So you're saying that the notice is seriously flawed in its statement that you have to be a NASA employee? I don't think it says you just have to be a NASA employee, Your Honor. But if it does say that, I think it is flawed. I think my reading of this, and I'm looking at the one at page 183, I think it's the same one as the court was looking at. This announcement is open to current NASA and SFC federal employees serving under the career condition of the already appointed. Comma. Those serving under Schedule A. Order. German employees with conversion. And just reading that plain language, that reading says that it's open to, and I'm going to insert A, B, and C. It's open to A, current NASA and SFC federal employees serving under a career, career conditional, or VRA appointment. Comma. And then it separates and it says those serving on an appointment under 213.3102 Schedule A. That's what I was pressing. I agree. That's an alternative. And then it goes back in it further. It says, or MSFC. If it was just saying we only want the Schedule A folks that are NASA, first of all, it didn't need to say that because they're already a NASA, so they're covered by one of three. I agree. It doesn't apply in any case. Absolutely. Yeah. Schedule A is not a Schedule A individual. It would not be appointed or entitled to any preference under Schedule A. But that could be read to define people who are at Marshall who qualify who are serving an appointment in 213 or Schedule A at Marshall. And that's our key point, Your Honor. It could be sent back to the judge, let us develop the facts, let us talk to the individuals that posted this, let us find out if that's what was meant. We don't know that that's what was meant. This Court doesn't have that before. We have two possible interpretations before it. It's a factual interpretation, and we weren't given the opportunity for discovery. Now, the counsel did point out that there was some discovery filed. My client initially, before he was my client, filed this appeal, came on board. I made 20 requests for production, 22 requests for interrogatories. The footnote to that appears in the appendix of 59. I did request some depositions, and I certainly would have negotiated to have a reasonable discovery in this case, but we were never given the opportunity. The judge says, I'm not ruling on your motion for a good cause to do discovery in this case. I'm going to say I'm going to dismiss it for lack of jurisdiction. This is the only appendix in the case, correct? Yes, Your Honor, and I apologize. So this is truly kind of a joint appendix? It is truly. We joined the appendix. The agency prepared and submitted it. I agree it's a joint appendix. I apologize for not submitting one, Your Honor. Hold on. I just want to make sure. This is an effective joint appendix. Yes, Your Honor. It's not just the government's. I agree it is a joint appendix. Finally, the respondent keeps referring to page 41 and keeps going back to the initial pleadings that Dr. Patton filed, saying he never cited a specific statute. There's nowhere in court case law, in fed circuit case law, that says that we have this really strict pleading requirement. In fact, as Your Honors have seen throughout this process, we have made the same argument. You can turn to page 135. We made the argument to the judge, the administrative judge, that, first of all, that he was denied the veteran's preference because of this whole Schedule A issue reaching outside the agency, and he was not given the opportunity to apply or be considered because of his preference as a veteran. We made it there. We made it at the petition for review before the full board in the record at 252, the joint appendix there at 252, and we're arguing it here today. It's been pled all along, and Dr. Patton certainly did not have the knowledge to get the statute specifically correct, but we did throughout the course of this process. And the respondent keeps saying that to get jurisdiction, you have to have a statute or a regulation relating to veteran's preference, and I'm curious what the VEOA is. The VEOA says that we are going to guarantee a right to compete. You must allow veterans the right to compete. It's not granting an additional preference, but you don't need the actual grant of a preference to get jurisdiction. You just need a statute relating to a veteran's preference. The VEOA relates to a veteran's preference. Therefore, it gives the jurisdiction, and that's what we've pled all along. Thank you. Thank you, Mr. Adams.